# Rock Valley College    *MEMORANDUM*

**TO:**    Lisa Farrell, Payroll Assistant

**FM:**    Sherry Foreman, Manager, Accounts Payable and Payroll Services

**DATE:**    February 11, 2004

**RE:**    Follow Up to 1/22/04 Meeting and 1/26/04 Letter

**CC:**    Shirley Hardy, Executive Dean of Human Resources

Lisa,

I met with Shirley and discussed your questions. I've listed them below.

1) **How long is the Oral Warning in your file?** The board policy states that the oral warning can remain in the file for up to 3 years. After one year, and barring no further problems occur. An employee may request the Supervisor that issued the Oral Warning to remove the letter from their file.
2) **How does the progression to the next step work?** An employee can progress to the next step if the problem remains unresolved and if any other problem or situation arises. The employer would not issue multiple Oral Warnings, at the occurrence of the next problem the employee would progress to the next step.

In addition to the above questions I wanted to address the suggested procedure that you presented "Steps to prevent processing of Unapproved BRs & PPRs".

The four step procedure (see attached copy) that you submitted is a start. However, step number 4 needs revising. Approval for PPRs (President's Personnel Report) is achieved by the signatures of the Executive Dean of Human Resources and the President of the college. That is what you should be looking for when you receive you copy. The "Officially Approved" stamp is a nice visual but the signatures are what count.

Whenever Payroll is waiting for an approval to process from a Board Meeting I have either left you a voicemail after the Board Meeting or sent an email. In the event that I am absent one of the other Managers in Financial Services would send the email. I've also made arrangements for Nancy Chamberlain to send the signed Board Report/Personnel Reports to Payroll the very next day after the Board Meeting. If it is not received in a timely manner, a phone call or email to Nancy would be acceptable.



EXHIBIT

B

-Continued-
Page 2

However, I would like to note that it should be rare that we are waiting on the Board Meeting to process a report for the current payroll. I discussed this problem with Sam Overton and Shirley Hardy a few months ago. It was decided that we would simply have to hold the reports for processing on the next payroll if the Board Meeting was too close to our transmission date for Direct Deposit. This was communicated to the Payroll Department at that time.

In closing I would like to setup a follow up meeting to address each of the 13 concerns listed in your letter. This meeting is scheduled for Thursday, February 12, 2004 at 3:30 pm in my office.

Please consider this a follow up meeting. However, the discussions may lead to disciplinary action therefore you may bring an ESP Representative. Please let me know if you plan on having someone there.

Sincerely,

Sherry Foreman
Manager, Accounts Payable and Payroll Services

Attachment

00044

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

| | | |
|---|---|---|
| LISA FARRELL, | ) | Case No. 05 L 301 |
| Plaintiff, | ) | |
| vs. | ) | |
| ROCK VALLEY COLLEGE, | ) | |
| Defendant. | ) | |

### PLAINTIFF'S MEMORANDUM IN RESPONSE TO DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT

NOW COMES the plaintiff, LISA FARRELL, ("FARRELL"), by PETER DeBRUYNE, P.C., and LEWIS. B. KAPLAN, her attorneys, and for her Memorandum in Response to Defendant's Memorandum in Support of Its Motion to Dismiss Plaintiff's Complaint states as follows:

### STATEMENT OF FACTS

FARRELL commenced her employment with defendant ROCK VALLEY COLLEGE ("RVC") on January 4, 1988 and performed her duties until her termination on June 16, 2004 (Complaint, ¶ 3). FARRELL worked in RVC"s payroll department from the commencement of her employment until her termination (Complaint, ¶¶ 2, 3). Prior to January 16, 2004, RVC, for the purpose of reliance thereon by its employees, posted on its website RVC Board Policy #629.00, a policy explaining progressive discipline. (Complaint, ¶ 5). From and subsequent to the posting of the Policy FARRELL relied upon it in the further performance of her duties at RVC. (Complaint, ¶¶ 6).

On January 16, 2004, Sherry Foreman ("FOREMAN'), RVC's Manager of Accounts Payable and Payroll Services, met with FARRELL and informed her of certain alleged deficiencies in "processing Board Report 6132 prior to the approval of the Board of Trustees."

1

In that meeting, FOREMAN also gave to FARRELL a copy of RvC Board Policy #629.00. (Complaint, ¶ 8). RVC attempted to summarize this meeting in a Memorandum dated January 22, 2004 which was distributed to FARRELL (FARRELL Affidavit, ¶5). In February, 2004, FOREMAN gave FARRELL another copy of RVC Board Policy #629.00. (Complaint, ¶ 9). On February 11, 2004, RVC distributed to FARRELL a Memorandum dated February 11, 2004 confirming that FARRELL was within the progressive disciplinary steps of Board Policy #629.00 and explaining how progression to the next step worked. (FARRELL Affidavit, ¶6). On June 8, 2004, FOREMAN gave FARRELL a written reprimand, attached to the Complaint as Exhibit B, which recited in relevant part:

> In summary, I consider your current work performance to be deficient and unsatisfactory. I expect to see immediate improvement. Please be aware that failure to address the concerns outlined in this memo or further failure to follow established policies and procedures will lead to further disciplinary action, up to and including your immediate dismissal as an employee of Rock Valley College. We will meet during the period of July 12 through July 23, 2004 to discuss your progress or at any time sooner that the situation may warrant. (Complaint, ¶ 10).

On June 16, 2004, RVC terminated FARRELL'S employment. (Complaint, ¶ 11).

At no time did SHIRLEY B. HARDY ("HARDY") or anyone else distribute to FARRELL any version of an RVC Employee Handbook. (FARRELL Affidavit, ¶ 4). At no time while employed at RVC did FARRELL become aware of any published or republished version of an RVC Employee Handbook. (FARRELL Affidavit ¶ 4).

## ARGUMENT

RVC has filed its Motion to Dismiss under 735 *ILCS* 5/2-619(a) (9). 735 *ILCS* 5/2-619(c) provides:

> If, upon the hearing of the motion, the opposite party presents affidavits or other proof denying the facts alleged or establishing facts obviating the grounds of defect, the court may hear and determine the same and may grant or deny the motion. If a material and genuine disputed question of fact is raised the court may decide the motion upon the affidavits and evidence offered by the parties, or may deny the motion without prejudice to the right to raise the subject matter of the motion by answer and shall so deny it if the action is one in which a party is entitled to a trial by jury and a jury demand has been filed by the opposite party in apt time. (Emphasis added).

FARRELL has demanded a jury trial and has denied the distribution to her or any awareness of an RVC Employee Handbook which purportedly contained the disclaimer upon which RVC pins the major part of its argument. Therefore, by statute, RVC'S motion insofar as it depends upon the disclaimer must be denied. Assuming, arguendo, that FARRELL had not submitted an affidavit denying the facts contained in the HARDY affidavit submitted by RVC, RVC's motion based on the disclaimer would still fail. The Supreme Court has ruled in *Doyle v. Holy Cross Hospital*, 186 Ill.2d 104, 708 N.E.2d 1140, 237 Ill.Dec. 100 (1999) that once a contract of employment has been formed (as has been pled without denial here), it cannot be changed unilaterally by the employer by a later republishing of a document inconsistent with the contract unless the employer provides consideration to the employee. *Doyle v. Holy Cross Hospital*, 186 Ill.2d 104, 112, 708 N.E.2d 1140, 1145. Nothing in the Complaint or in the HARDY Affidavit indicates any consideration supplied by RVC to FARRELL to support the change in her contract so that a disclaimer of her contractual rights could be incorporated. And although it is not material at this point, numerous Illinois cases would hold that the disclaimer contained in RVC's Employee Handbook would be ineffective in nullifying the rights given to FARRELL under other provisions of the Handbook.

As noted in *Duldulao v. St. Mary of Nazareth Hospital*, 115 Ill.2d 482, 505 N.E.2d 314 (1987) at 115 Ill.2d 482, 491:

> First the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer had been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

The Complaint here states the facts supporting the second and third *Duldulao* requirements, i.e. (1) the statement was disseminated to FARRELL so that she became aware of its contents and reasonably believed it to be an offer, (2) FARRELL accepted it by continuing to work after learning of it. RVC's

3

00047

argument is thus reduced to whether RVC Board Policy #629.00 constitutes a contract with FARRELL.

Whether RVC Board Policy #629.00 constitutes a contract is a question of law, not fact, to be decided by this Court. *Brown v. R.R. Donnelly & Sons Company*, 272 Ill.App.3d 94, 650 N.E.2d 8, 650 N.E.2d 8, 9 (4th Dist. 1995). As RVC has pointed out, the document must be read as a "coherent whole," *Border v. City of Crystal Lake*, 75 F. 3d, 270, 274 (7th Cir. 1996). For the Court's ready reference, a copy of RVC Board Policy #629.00 has been attached to this Memorandum as Exhibit "A." FARRELL invites the Court to read the argument as an RVC applicant for employment or a current RVC employee may have read it upon its distribution in November, 2003. The tenor of the document is a warmhearted one. The phrase describing progressive disciplinary steps in paragraph two on page one, "may be utilized," legitimately leaves the impression that performance or behavior issues of an employee can be addressed in a less draconian manner. Yet, it is true that a legitimate possibility exists that these steps may not be utilized at all. There is no doubt, however, that once the disciplinary steps have been instituted, they are mandatory upon RVC and the employee from the first proposed action ("upon the determination of the immediate supervisor that a problem exists that may lead to disciplinary action, the employee will be notified in writing . . .") to the last step in progressive discipline on page three, Step 4 ("a recommendation for dismissal will be prepared for the "Board of Trustees").

Then arriving at page three, an applicant or employee skeptical of the warm tenor of the document and remaining unconvinced by the rigor of the steps required before dismissal, would have his skepticism allayed by RVC's promise that "extraordinary misconduct," such as a crime, may result in a recommendation by RVC's President for a dismissal hearing before RVC's Board of Trustees. Now the skeptical employee sees that the reasonable reading of the document was that of his fellow employee which was that the progressive steps were more severe than what RVC could

4

otherwise do, because RVC was referred to the progressive disciplinary process as a process to be focused on "most serious problems." Only when an employee's performance or behavior exceeds the bounds of a "most serious problem" and arrives in the land of "extraordinary misconduct" does RVC's President have the discretion to recommend a dismissal hearing. Because the examples include crime and other behaviors invoking moral turpitude, "intentional falsification . . . ," "sabotage . . . ," the normal reader-employee-applicant would favorably consider employment by or continuing employment with RVC if job security were in issue. This common sense reading is further buttressed by RVC's choice of wording in "Note #1" and "Note #2" on page three where it remarks that Step 1 and/or Step 2 of the progressive discipline process "may be waived . . . " and the "employee has the right to Association representation or a witness . . . " "Waiver" is defined in Black's Law Dictionary as: "The intentional or voluntary relinquishment of a known right . . .; when one dispenses with the performance of something he is entitled to exact . . ." By this phrase, RVC indicates that the progressive disciplinary progress is a legal right upon which the employee may rely and not a discretionary allowance on RVC's part. If it were discretionary, there would be no necessity for RVC to specify that such steps could be "waived." The further reference to the employee's "right" to a representative or a witness further underscores the legal nature of the progressive disciplinary steps and the document as a whole. Everyone knows that a "right" cannot be taken away by whim. In sum, a reasonable reading of this document would lead a reasonable person to believe that he could rely upon the procedures expressed. To suggest, as RVC now does, that by cherry-picking certain phrase such as "may be utilitized," "will be desirable" (and concurrently ignoring 13 steps mandated upon itself from the start of progressive discipline through Step 4, i.e. "will be notified . . . will be summarized . . . will take place within 30 days . . . recommendation for dismissal will be prepared for the Board of Trustees") and not reading the document as a "coherent whole," as it also urges, RVC has attempted to create an entirely new broad avenue of reality for its employee or potential employee which is that you can be fired at any time for anything or for nothing at all. No rational person would

5

00049

expect that freedom was left to RVC after reading this document. Certainly RVC did not believe this about its document because, as the FARRELL affidavit shows, it itself was relying upon its disciplinary steps and its "progression" in January and February, 2004 when the alleged performance problems of FARRELL manifested themselves. It looks as though RVC was convinced that it had to follow the progressive steps with FARRELL but at some point concluded that the disclaimer contained in its Employee Handbook (see discussion above) was sufficient to dispense with its obligations to FARRELL. Certainly what is not apparent from RVC's conduct is the argument now advanced by RVC; namely, that Board Policy #629.00 by itself, without the disclaimer, was not obligatory. It very much looks like RVC appreciated the contractual nature of its document but then mistakenly concluded that it was absolved of its obligations once the Handbook with its disclaimer was published.

Several courts have pointed out that a progressive disciplinary system is more likely a contract if it sets forth specific procedures in positive and mandatory language such as Board Policy #629.00 does here. See *St. Peters v. Shell Oil Co.*, 77 F. 3d 184 (7th Cir. 1996); *Brown v. R.R. Donnelly & Sons Co.*, 272 Ill.App.3d 94, 650 N.E.2d 8 (4th Dist. 1995); *Harden v. Playboy Enterprises, Inc.*, 261 Ill.App.3d 443, 633 N.E.2d 764 (1st Dist. 1993). Further, Board Policy #629.00 speaks prospectively in commencing "It is the intent of Rock Valley College to foster optimum performance . . ." As recognized in *Brown v. R.R. Donnelly & Sons Company*, 272 Ill.App.3d 94, 650 N.E.2d 8 (4th Dist. 1995):

> We conclude that subsection II(J) of section ER1-0600 of the manual, which states that it is company practice to "[b]ase all separations on verified facts, not on anyone's whim or unsupported opinion," is too vague to be reasonably construed as an offer. Indeed, we view the presence of the qualifying phrase "it is Company practice to *** "as rendering the language that follows contingent and uncertain. This is not just an interpretation of "lawyer talk," but an assessment of standard English usage. The phrase "it is company practice to" contains several different shades of meaning, but in all instances, it means *at least* the following" This is something the company has done in the past and likely to do in the future, *but you cannot count on it.*" As opposed to typical contractual language, in which

6

the offeror speaks *prospectively*, the phrase that "it is Company practice to" speak retrospectively. In a normal offer leading to a contract, A promises B that A will do something in the future, if B similarly does something in the future. When A uses the phrase in question here, A is asking B to infer A's *likely conduct* in the future based upon A's past performance, but that is far short of a *promise* by A to engage in that conduct. *Brown v. R.R. Donnelly & Sons Company*, 272 Ill.App.3d 94, 97.

The Second District in *Wheeler v. The Phoenix Company of Chicago*, 276 Ill.App.3d 156, 658 N.E.2d 532 (2nd Dist.1995) issued an opinion helpful to a resolution of the issue here. There the employer issued a handbook which stated in relevant part:

> "[T]he first 90 days of employment is a trial period. * * * Completion of this period does not guarantee continued employment for any specified period of time, nor does it require that an employee be discharged for 'cause.'" . . . "[i]n the event of any infraction of Company rules, the following procedure.". . . "Depending on the severity or continued infraction of any of the above rules, any violation may be grounds for disciplinary action which could be cause for immediate dismissal. *Immediate Dismissal* . . . To protect an employee against unfair dismissal, an employee normally will not be discharged without first receiving a written warning. However, certain infractions can subject you to immediate dismissal. In those situations, written permission from the President to immediately dismiss an employee will be obtained and given to the Supervisor. Those situations include:
>
> 1. Any employee clocking another employee 'in' or clocking an employee 'out.'
>
> 2. Any employee intentionally falsifying Company records, including time records and personnel records.
>
> 3. Any employee taking any item belonging to the Company or another employee without authorization.
>
> 4. Any employee distributing, publicizing or revealing confidential Company information without the written approval of the President.
>
> 5. Any employee taking or removing any electronic data processing data (including handwritten or hard copy produced) from the premises without written approval of the President." *Wheeler v. The Phoenix Company of Chicago*, 276 Ill.App.3d 156, 158, 658 N.E.2d 532 (2nd Dist. 1995).

In *Wheeler*, as is alleged here, the employee was fired for behavior which did not fit within the express situations of extreme misconduct. There, as here, the employee was not accorded the progressive disciplinary procedure. Unlike the policy here, however, the policy in *Wheeler* expressly

7

provided that completion of the probationary period did not "guarantee continued employment for any specified period of time, nor does it require that an employee be discharged for 'cause.'" There, unlike here, the handbook provided for "immediate dismissal" for extraordinary misconduct whereas here only a recommendation for a dismissal hearing is provided. The *Wheeler* court first pointed out that the employee manual there, like Board Policy #629.00 here, contained no express, explicit, and unequivocal disclaimer of contractual obligation by the employer. The *Wheeler* court then went on to explain that *Duldulao* permitted disclaimers or bypass of disciplinary procedures only if, as set out in the Uniform Commercial Code, such disclaimers would not take a person by "surprise" or deny them the "benefit of the bargain they negotiated." Then the court reasoned that the handbook's statement providing that completion of a trial period did not require an employee be discharged for cause was an ineffective disclaimer because it was not distinguished from the remainder of the text and thus would be unfair. Here, of course, there is no express statement, the express statements being to the contrary, hinting that an RVC employee could be discharged without cause. There, as here, the court pointed out the mandatory nature of the progressive disciplinary procedure except for extraordinary misconduct circumstances. Finally, the employer in *Wheeler* argued that it had complied with its handbook because the handbook provided for the possibility of immediate dismissal without written warning. The trial court noted that the plaintiff was not engaged in any of the extraordinary misconduct rules violations listed and affirmed the trial court in finding that the employer did not comply with its disciplinary policies. The court noted:

> An employee reading the employee handbook would reasonably believe that she would not be terminated without prior written warning except in the specific circumstances enumerated. Again, this ambiguity must be construed against defendant as the drafter of the employee handbook (citing cases). *Wheeler v. The Phoenix Company of Chicago*, 276 Ill.App.3d 156, 158, 658 N.E.2d 532 (2nd Dist. 1995).

Though FARRELL believes Board Policy #629.00 clearly gives her a right to recover in this case, any ambiguity arguably created by RVC in detailing circumstances by which its progressive disciplinary

8

process may be bypassed (as in *Wheeler*), in providing for "waive(ing)" steps in the disciplinary process, and in giving an employee a "right" to be presented, must be construed against RVC as it was the drafter of Board Policy #629.00.

## CONCLUSION

Board Policy #629.00, read as a coherent whole, does not provide for dismissal of FARRELL except by RVC's Board of Trustees. The Policy gives FARRELL a right to all of the listed steps in progressive discipline. RVC treated FARRELL'S alleged misbehavior as behavior not constituting "extraordinary misconduct" because it commenced treating her alleged performance problems under its step by step progressive disciplinary policy. Once commenced, those steps by the language chosen by RVC, are mandatory upon FARRELL and RVC. Any ambiguity must be resolved against RVC. No disclaimer applies.

For all the foregoing reasons, RVC's Motion to Dismiss Plaintiff's Complaint must be denied.

Respectfully submitted,

LISA FARRELL, Plaintiff,

BY: PETER DeBRUYNE, P.C.

Peter DeBruyne, Her Attorney

Lewis B. Kaplan, Her Attorney

Peter DeBruyne - #405
PETER DeBRUYNE, P.C.
838 North Main Street
Rockford, IL 61103
Telephone (815) 964-3810

Lewis B. Kaplan - #1207
838 North Main Street
P.O. Box 1254
Rockford, IL 61103
Telephone (815) 963-3090
Attorneys for Plaintiff.

9

00053

## CERTIFICATE OF SERVICE

STATE OF ILLINOIS          )
                           )     SS.
COUNTY OF WINNEBAGO        )


Pursuant to Supreme Court Rule 12, the undersigned certifies that he served a copy of the foregoing Plaintiff's Memorandum in Response to Defendant's Memorandum in Support of its Motion to Dismiss Plaintiff's Complaint on:

Attorney Barbara Endoy
ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD.
20 North Clark Street, Suite 900
Chicago, IL 60602

by enclosing same in an envelope, addressed as is shown above, with proper postage prepaid, and depositing same in the United States mail at Rockford, Illinois on the 9th day of November, 2005 at 5:00 p.m.

Peter DeBruyne


SUBSCRIBED and SWORN to before
me this 9th day of November, 2005.


Notary Public.

"OFFICIAL SEAL"
LAURA M. HARGIS
Notary Public, State of Illinois
My Commission Expires 07/11/2006

10

00054

November 25, 2003

Rock Valley College

<div style="border:2px solid black;">

**BOARD POLICY #629**      **ADMINISTRATIVE PROCEDURES**

</div>

## Progressive Discipline

It is the intent of Rock Valley College to foster optimum performance and otherwise assist PSA/ESP Full-time and Continuous Part-time Employees in the accomplishment of their professional responsibilities. Each staff member is assumed to be personally committed to high performance and active participation in the life of the College community.

Recognizing that the preferred outcome of the progressive disciplinary process is positive change in the performance/behavior brought to the involved staff member's attention, several steps of increasing severity may be utilized.

Upon the determination of the immediate supervisor that a problem exists that may lead to disciplinary action, the employee will be notified in writing and allowed to seek the assistance of the appropriate Staff Association representative(s) for informal resolution.

These steps are:

Step 1: <u>Formal Oral Warning:</u>

     A. Issued in conference with the staff member by her/his immediate supervisor, the oral warning is used to:

         a. Formally present/define the problem at hand;
         b. Convey the expectation that the staff member will take the step(s) necessary to rectify the problem within a prescribed time period;
         c. Describe the methods for assessing compliance. The information presented in the oral conference will be summarized in written memorandum form within two (2) days of the conference, with copies provided to the staff member and placed in her/his personnel file; and
         d. Review of the staff member progress will take place within 30[1] days of the oral warning conference.

---

[1] Employees involved in disciplinary action may not be allowed to transfer during this disciplinary period.

Progressive Discipline Policy- Human Resources Services-11/03

Page 1 of 3



**EXHIBIT**

**A**

00055

B. At or about the completion of the time period provided for in the oral warning, a conference will be held with the staff member to ascertain whether all expectations set forth in the warning have been met.

If the identified problem is not resolved as expected, the problem and outcome will be documented in writing, placed in the staff member's personnel file for a period of up to three (3) years[2], with the progressive disciplinary process completed, unless further infractions occur. After one year, and barring no further problems occur. An employee may request the Supervisor to remove the letter from their file.

Step 2: Written Warning:

A. If the serious problem remains unresolved, a written reprimand will be presented to the involved staff member in conference with the immediate supervisor and Executive Dean of Human Resources. In it will be specified :
    1.) the nature of the problem;
    2.) a summary of prior efforts made on behalf of the College to resolve the\ problem;
    3.) a listing of the directed change(s) to be made;
    4.) the time period prescribed for that purpose; and
    5.) a summary of methods for assessing compliance
A review of the employee's progress will take place at least 30 days after a written reprimand is issued.

At or about the completion of the time period provided for in the written reprimand, a conference will be held with the staff member to ascertain whether all directed changes set forth in the reprimand have been met. If the identified problem is resolved as directed, the outcome will be documented in writing, attached to the written reprimand and placed in the staff member's personnel file for up to a period of four (4) years, with the progressive disciplinary process completed, unless further infractions occur. After one year, an employee may request the Supervisor to remove the letter from their file.

Step 3: Suspension:

A. If the serious problem remains unresolved, the staff member will be issued suspension without pay. Depending on the seriousness of the problem, the suspension can be within 1-3 days. The suspension shall be documented and placed in the employee's personnel file for a period of four (4) years.

---

[2] Assumes peer guidance assistance was accepted and no reoccurrence during the three (3) year period.
Progressive Discipline Policy- Human Resources Services-11/03

00056

Step 4: <u>Dismissal:</u>

    A. If the documentation shows all previous formal methods of disciplining the employee has failed, a recommendation for dismissal will be prepared for the Board of Trustees.

Notice: Though the above progressive discipline process will be desirable for resolving most serious problems, extraordinary misconduct may, at the discretion of the President, warrant by-pass of the process in favor of an immediate suspension or a dismissal hearing. Examples of serious misconduct that may necessitate such action include but are not limited to the following:

    1. Intentional falsification of credentials, time sheets, and/or College records.

    2. Conviction of a felony or misdemeanor for a criminal violation that would impact upon the staff member's ability to perform her/his job (such as theft of college property and possession, use or sale of illegal drugs on College property).

    3. Sabotage of the College's systems or property.

Note #1: Step 1 and/or Step 2 of the progressive discipline process may be waived upon repetition of the original/similar serious or continuous problems within the time period(s) in which documentation pertaining to the original problem is retained in the staff member's personnel file.

Note #2: The employee has the right to Association representation or a witness of their choice, at any level of the disciplinary meeting.

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

LISA FARRELL,                          )
                                       )
                Plaintiff,             )
                                       )
        vs.                            )        Case No. 05 L 301
                                       )
ROCK VALLEY COLLEGE,                   )        Judge Janet Holmgren
                                       )
                Defendant.             )

### BRIEF IN REPLY
### TO PLAINTIFF'S MEMORANDUM IN RESPONSE
### TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### INTRODUCTION

Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Plaintiff's Complaint ("Response Memorandum") attempts to manufacture questions of fact in order to preclude the Court from granting Defendant's Motion to Dismiss. However, even assuming, *arguendo*, that all of the allegations in Plaintiff's Response Memorandum are true, Plaintiff has failed to establish that Board Policy #629 is a mandatory progressive discipline policy which establishes binding and enforceable contractual employment rights. Further, Plaintiff's claim for breach of employment contract is undermined by the clear and conspicuous at-will employment disclaimers contained in various editions of the College's Employee Handbook in effect during Plaintiff's sixteen years of employment. Accordingly, the College is entitled to dismissal of Plaintiff's Complaint as a matter of law.

I.      **THE CASES CITED IN PLAINTIFF'S RESPONSE MEMORANDUM DO NOT SUPPORT HER ARGUMENT THAT THE LANGUAGE OF BOARD POLICY #629 IS MANDATORY AND ESTABLISHES AN ENFORCEABLE CONTRACTUAL RIGHT.**

In her Response Memorandum, Plaintiff cites several Illinois appellate and federal appellate court decisions. The cases cited by Plaintiff are either clearly distinguishable on their facts, or actually *support* the College's argument that Board Policy # 629 is non-mandatory and does not contractually obligate the College to apply progressive discipline

00058

in all instances of unsatisfactory or deficient employee performance or conduct. Moreover, there is absolutely no case support for Plaintiff's argument that Board Policy # 629 allows the College to elect not to apply progressive discipline in disciplining employees, but that "once the disciplinary steps have been instituted, they are mandatory...." (See Response Memorandum, p. 4).

Plaintiff cites *St. Peters v. Shell Oil Co.*, 77 F.3d 184, 188 (7th Cir. 1996) (see Response Memorandum, p. 6) to support her contention that Board Policy # 629 is mandatory and requires strict application of progressive discipline to Plaintiff. In *St. Peters*, the court affirmed the *dismissal* of the plaintiff's breach of contract action based on his failure to establish the existence of contractual employment rights in a progressive disciplinary policy contained in the employee handbook. The language of the progressive disciplinary policy at issue in *St. Peters* virtually mirrors the language of Board Policy # 629. Like Board Policy # 629, the *St. Peters* policy stated that progressive discipline "may" be used at the discretion of management. 77 F.3d at 186. The policy stated, in pertinent part:

> To continue working at WRMC, each employee must meet WRMC's performance expectations. For the few employees who do not make that commitment, progressive discipline and/or discharge **may** result. 77 F.3d at 186 (emphasis added).

The *St. Peters* court ruled that this language created a policy which was "clearly discretionary", holding as follows:

> Employees reading the handbook section pertaining to individual responsibilities and guidelines for conduct are advised that "progressive discipline and/or discharge **may** result." **This language is clearly discretionary, not mandatory. It certainly is not promissory.** It suggests that progressive discipline **may, but need not,** result from, for example, poor performance. It does not say that a Shell employee cannot be terminated unless Shell follows prescribed procedures of progressive discipline. 77 F.3d at 188.

2

Like Board Policy # 629, the *St. Peters* policy further contained a section entitled, "Formal Levels of Discipline" which identified levels of discipline (verbal reminder, letter reminder, disciplinary suspension and termination), and described the circumstances under which such levels of discipline could be implemented by stating: a letter reminder "**will occur**", a disciplinary suspension "**will occur**," and "termination **results** when. . . " *Id.* (emphasis added). 77 F.3d at 186. The *St. Peters* court noted that this language contained <u>no</u> guarantee that each formal level of progressive discipline would be implemented in every instance. *Id.* at 188. Rather, the court ruled:

> **As noted above, Appendix A, "Formal Levels of Progressive Discipline", allows Shell, in its discretion, to skip one or more of the three formal levels of progressive discipline (verbal reminder, letter reminder and disciplinary suspension) and go straight to termination depending upon its assessment of the seriousness of the employee's action.** Thus, a letter reminder may issue in the absence of a prior verbal reminder. A disciplinary suspension may be imposed despite the lack of a prior verbal or letter reminder. Finally, some conduct is regarded as so serious that the formal levels of progressive discipline are by-passed altogether and immediate termination is required. **By its very terms, Appendix A does not guarantee that the formal levels of progressive discipline will be followed in all cases and without exception. We have found that similar handbook language permitting an employer to "jump the queue" is "too loose and vague to confer a legally enforceable right" to progressive discipline.** 77 F.3d at 188.

In the instant case, too, Board Policy # 629 states that "extraordinary misconduct may, at the discretion of the President, warrant by-pass of the process in favor of an immediate suspension or a dismissal hearing." Like the policy at issue in *St. Peters*, Board Policy #629, by its very terms, allows the College to bypass the progressive disciplinary process. Based upon *St. Peters*, Board Policy # 629 cannot be deemed to be mandatory or binding.

Plaintiff also cites *Harden v. Playboy Enterprises, Inc.*, 261 Ill. App. 3d 443, 633 N.E.2d 764 (1st Dist. 1993) (see Response Memorandum, p. 6), which is distinguishable. In *Harden*, the plaintiff claimed that the employee handbook created enforceable contract

3

rights to progressive discipline. Unlike the Rock Valley College Employee Handbook and Board Policy # 629, the employee handbook at issue in *Harden* contained no at-will employment disclaimer. 261 Ill. App. 3d at 449, 633 N.E.2d at 768. Rather, in contrast to the Rock Valley Employee Handbook and Board Policy # 629, the employee handbook in *Harden* contained a clear promise of continued employment.[1] To the contrary, Board Policy # 629 contains no clear promise of continued employment. In short, *Harden v. Playboy Enterprises, Inc.* is inapposite to the facts at bar.

Plaintiff cites *Wheeler v. Phoenix Company of Chicago*, 276 Ill. App. 3d 156, 658 N.E.2d 532 (2nd Dist. 1995) (see Response Memorandum, p. 7), which also is factually distinguishable and, therefore, inapposite. As a preliminary matter, unlike the College's Employee Handbook, the employee handbook in *Wheeler* contained no express at-will employment disclaimer, which is one of the primary distinctions on which the *Wheeler* court based its ruling. 276 Ill. App. 3d at 161, 658 N.E.2d at 535-536. Specifically, the *Wheeler* court pronounced:

> We have already stated that offers may be disclaimed under the *Duldulao* doctrine. This is appropriate in light of the presumption of at-will employment. Permitting an employer to bypass procedures outlined in an employee handbook preserves the efficacy of such handbooks – clearly enunciating the rights and duties of employees – without altering the nature of at will employment whenever an employee handbook is issued. *Id.*, 658 N.E.2d at 536.

In addition, the *Wheeler* employee handbook contained the following unequivocal offer to implement progressive discipline in *all instances*:

---

[1] The handbook stated in pertinent part: "In exchange for your services, Playboy will serve your personal needs for growth, job satisfaction and financial security..... This handbook is designed to be a permanent record for the information that is important to you throughout your career with Playboy..... We are pleased to have you as a member of the Playboy organization and look forward to a continued and mutually rewarding association." 261 Ill. App. 3d at 449, 633 N.E.2d at 769. In this case, neither the College's Employee Handbook nor Board Policy #629 contains the offer language found in the *Harden* employee handbook. The College's employee handbook contains a conspicuous disclaimer which makes it clear that College employees are employed on an "at-will" basis. Board Policy # 629 does not proclaim to be a "permanent record" of information during the career of the College's employees.

4

> In the event of *any* infraction of Company rules, the following procedure **will** be used. The Company **will use a progressive disciplinary procedure**. *Id.* at 157, 658 N.E.2d at 533 (emphasis added).

Not only did the *Wheeler* employee handbook guarantee the use of progressive discipline, it expressly stated that "an employee normally will not be discharged without first receiving a written warning." 276 Ill. App. 3d at 158, 658 N.E.2d at 534. The *Wheeler* court ruled that these clear statements that an employee can be discharged only pursuant to identified steps of the progressive disciplinary policy gave rise to a contractual employment right. 276 Ill. App. 3d at 160, 658 N.E.2d at 535. Board Policy #629, however, contains no such promise to implement a progressive disciplinary procedure in all instances. The Policy also contains no language requiring that an employee must receive a verbal or written warning before discharge.

The *Wheeler* employee handbook guaranteed the implementation of progressive discipline unless an employee engaged in one of five specific infractions which could result in immediate dismissal. *Id.* at 163, 658 N.E.2d at 537. In contrast, by its very terms, Board Policy #629 states that the list of examples of "serious misconduct" which may lead to immediate discharge is "not limited." It is well settled that a non-exclusive list of serious offenses or employee misconduct that warrants immediate discharge does not create enforceable employment contract rights to continued employment. *See Shepley v. DuPont De Nemours and Co.*, 722 F. Supp. 506 (C.D. Ill. 1989). Accordingly, Plaintiff's contention that steps of the progressive disciplinary process outlined in Board Policy # 629 (i.e., suspension) may be bypassed only in instances of "serious misconduct" such as intentional falsification of time sheets or College records, conviction of a felony or misdemeanor, or sabotage of College systems or property, is without merit. (See Response Memorandum, p. 4). In short, *Wheeler* is clearly distinguishable on its facts.

5

00062

II.   **PLAINTIFF'S CONTENTION THAT THE LANGUAGE OF BOARD POLICY # 629 GIVES RISE TO CONTRACTUAL EMPLOYMENT RIGHTS IS NOT SUPPORTED IN FACT OR LAW.**

In her Response Memorandum, Plaintiff *admits* that the language of Board Policy # 629 suggests that employee performance issues can be addressed by means of steps other than those set forth in the Policy. (Response Memorandum, p. 4). Plaintiff further acknowledges that "a legitimate possibility exists that these steps may not be utilized at all." (Response Memorandum, p. 4). Plaintiff even *admits* that, at the discretion of the President, steps within Board Policy #629 may be bypassed altogether. (See Response Memorandum, p. 5). In sum, Plaintiff concedes that Board Policy # 629 does not require or mandate the College to follow a 4-step progressive discipline sequence in all instances of an employee's deficient performance or unsatisfactory conduct.

Despite these admissions regarding the non-binding provisions of Board Policy # 629, Plaintiff asserts that "once the disciplinary steps have been instituted, they are mandatory upon RVC." (Response Memorandum, p. 4). This unsupported conclusion lacks any legal or factual basis. Further, Plaintiff's contention that Board Policy # 629 confers a "legal right" to progressive discipline upon employees, and that employees may choose to waive this legal right, is unfounded and without merit. (Response Memorandum, p. 5). Clearly it is the College, and not employees, which may exercise the right to bypass the progressive disciplinary process, because no employee would elect to forego an oral or written warning in favor of suspension or termination of employment.

III.   **ASSUMING, *ARGUENDO*, THAT ALL OF THE FACTS ALLEGED IN PLAINTIFF'S RESPONSE MEMORANDUM ARE TRUE, PLAINTIFF CANNOT OVERCOME THE PRESUMPTION OF AT-WILL EMPLOYMENT AND, ACCORDINGLY, DISMISSAL OF PLAINTIFF'S COMPLAINT IS APPROPRIATE.**

First, Plaintiff's Response Memorandum alleges that Plaintiff never received or was aware of the College's Employee Handbook which contains a clear disclaimer of

6

00063

contractual employment.[2] (Plaintiff's Response, p. 2) (Farrell Affidavit, ¶ 4). Even assuming that to be true, pursuant to Illinois law, Plaintiff's employment with the College was at all times presumptively "at-will" and subject to termination at any time, for any reason or for no reason. *Long v. Ill. Municipal Elec. Agency*, 90 F. Supp. 2d 181, 185 (C.D. Ill. 2000).

Second, Plaintiff's Response Memorandum alleges that Plaintiff received Board Policy # 629 in January 2004, *before* the College's Employee Handbook was republished and distributed. (Plaintiff's Response, pp. 1-2) (Farrell Affidavit, ¶ 5). According to Plaintiff, Board Policy # 629 created contractual rights which could not be "changed unilaterally" or without consideration.[3] (Plaintiff's Response, p. 3). However, the Employee Handbook which was in effect in January 2004 – *before* Plaintiff's alleged receipt of Board Policy # 629 – also contained an express disclaimer affirming that the College is an at-will employer and negating the creation of contractual employment rights. (See Exh. A). This earlier version of the College's Employee Handbook stated as follows:

This handbook provides information only and is not a policy manual. . .

- This handbook does not express or imply an employment contract.
- Rock Valley College is an at-will employer: either you or the college may terminate your employment at any time for any reason with or without notice.
- We may change or add, and/or delete information as required. (Exh. A).

As the cases cited in Defendant's Motion to Dismiss make clear, the above disclaimer precludes Plaintiff from effectively asserting that Board Policy # 629 guaranteed Plaintiff

---

[2] Plaintiff worked in the College's Payroll Department from 1988 to 2004. (Complaint, ¶ 2). Her assertion that, during 16 years of employment with the College, she never became aware of _any_ published or republished version of the College's Employee Handbook is implausible. (Plaintiff's Response, p. 2, Farrell Affidavit, ¶ 4).

[3] As the cases in Defendant's Motion to Dismiss make clear, the language of Board Policy # 629 is not obligatory and, therefore, no contractual rights were created. (See also Argument I, *infra*).

00064

the contractual right to progressive discipline.[4] To rebut this, Plaintiff offers nothing more than her protestation that during her 16 years of employment with the College, she was never made aware of the College's Employee Handbook. (See Farrell Affidavit, ¶ 5).

Third, Plaintiff's Response asserts:

> On February 11, 2004, RVC distributed to FARRELL a Memorandum dated February 11, 2004 confirming that FARRELL was within the progressive disciplinary steps of Board Policy #629.00 and explaining how progression to the next step worked. (Plaintiff's Response, p. 2) (Farrell Affidavit, Exh. B).

Contrary to Plaintiff's Response Brief, the February 11, 2004 Memorandum from the College contains no such alleged confirmation that the College was required to discipline Plaintiff by following each sequential step of the progressive discipline policy. The memorandum merely confirms that after Plaintiff was issued an oral warning, she asked her supervisor about the length of time the oral warning would remain in her personnel file, and how the progressive disciplinary process worked. (See Farrell Affidavit, Exh. B). The fact that Plaintiff asked these questions suggests that the Plaintiff viewed the application of Board Policy # 629 as within the discretion of her supervisor. Moreover, the mere fact that Plaintiff's supervisor responded to Plaintiff's questions about the oral warning and the progressive disciplinary process does not establish that Plaintiff "was within" the Policy, or that the College was contractually bound by it.

---

[4]Plaintiff's argument that the College failed to provide consideration "to support the change in her contract so that a disclaimer of her contractual rights could be incorporated" misses the mark. Because the at-will employment disclaimers in the two most recent versions of the College's Employee Handbook are consistent, the republication of the College's Employee Handbook in May 2004 did not result in the College's unilateral modification of any alleged employment contract rights based upon Board Policy #629. (See Response Memorandum, p. 3). Accordingly, the case of *Doyle v. Holy Cross Hospital*, 186 Ill.2d 104, 708 N.E.2d 1140 (1999) (see Response Memorandum, p. 3), in which the employer modified the rights of employees by adding an at-will employment disclaimer to its employee handbook, is inapposite.

8

## CONCLUSION

Plaintiff's Response Memorandum provides no factual or legal basis for Plaintiff's claim that she was contractually entitled to progressive discipline prior to her termination of employment. The case law cited by Plaintiff either supports the College's position that Board Policy #629 is non-mandatory, or is clearly distinguishable from the facts at bar. Even assuming, *arguendo*, that Plaintiff never received or was aware of the College's Employee Handbook or the disclaimers contained in it, the legal authority cited in Defendant's Motion to Dismiss makes clear that Plaintiff was presumptively an at-will employee subject to termination at any time, for any reason or for no reason. Plaintiff 's Response Memorandum presents no relevant case law to counter the College's position. Accordingly, the College is entitled to dismissal of Plaintiff's Complaint.

Respectfully submitted,

**ROCK VALLEY COLLEGE**

By: _____
One of Defendant's Attorneys

Philip H. Gerner III (3127953)
Barbara Endoy (6285513)
ROBBINS, SCHWARTZ, NICHOLAS,
  LIFTON & TAYLOR, LTD.
20 North Clark Street, Suite 900
Chicago, Illinois 60602
Tel. 312.332.7760
Fax 312.332.7768

Dated: November 29, 2005

9

**00066**





# Employee Handbook Plus



Information compiled and distributed by the
Human Resource Department of RVC.

00068

# *WELCOME TO RVC!*

Please read your employee handbook and refer to it often. This handbook provides information only and is not a policy manual.

We encourage you to take notes, write any questions you may have while reading your handbook and discuss them with your supervisor or Human Resources representative at any time.

- Rock Valley College is an affirmative action/equal opportunity employer.

- This handbook does not express or imply an employment contract.

- Rock Valley College is an at-will employer: either you or the college may terminate your employment at any time for any reason with or without notice.

- We may change or add, and/or delete information as required.

- Any Rock Valley employee who has knowledge of any activity or behavior which is unethical, immoral or illegal must report this activity or observed behavior immediately to their supervisor or to the Executive Dean/Human Resources.

## Human Resource Services
## Mission Statement

*We are dedicated to serving the needs of employees by attracting, selecting, training, developing, and retaining the highest quality faculty and staff for the enrichment of all life long learners.*

**00069**

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

| | | |
|---|---|---|
| LISA FARRELL, | ) | Case No. 05 L 301 |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ROCK VALLEY COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

**FILED**
Date ʼ2 / 14 / 05
MARC A. GASPARIN
Clerk of the Circuit Court
WINNEBAGO COUNTY ILLʼ

**PLAINTIFF'S MOTION TO STRIKE ALLEGED FACTUAL MATERIAL
UNSUPPORTED BY AFFIDAVIT CONTAINED IN DEFENDANT'S BRIEF IN REPLY
TO PLAINTIFF'S MEMORANDUM IN RESPONSE TO
DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

NOW COMES the plaintiff, LISA FARRELL, by PETER DeBRUYNE, P.C., her attorney, and for her Motion to Strike Alleged Factual Material Unsupported by Affidavit contained in Defendant's Brief in Reply to Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Plaintiff's Complaint, states as follows:

735 *ILCS* 5/2-619 provides in relevant part:

> ". . . if the grounds do not appear on the face of the
> pleading attacked the motion shall be supported by affidavit . . . "

At pages 7 and 8 of its Brief in Reply and with Exhibit "A" attached to the Brief, defendant attempts to insert alleged factual material into the record before this Court which factual material is unsupported by Affidavit as required by the material quoted above. Further, the Brief in Reply references a handbook as the exhibit but attaches only selected pages from it. In all events, plaintiff's Affidavit at paragraph 4 rebuts the alleged factual material and thus were the Court to rely on it for disposition of defendant's Motion, the Motion would have to be denied pursuant to 735 *ILCS* 5/2-619(c).

00070

To further the ends of justice and keep the record in this case clear, plaintiff respectfully requests that all of defendant's argument in its Brief in Reply referring to Exhibit "A" and Exhibit "A" itself be stricken.

Respectfully submitted,

LISA FARRELL, Plaintiff,

BY: PETER DeBRUYNE, P.C.

Peter DeBruyne, Her Attorney

Peter DeBruyne - #405
PETER DeBRUYNE, P.C.
838 North Main Street
Rockford, IL 61103
Telephone (815) 964-3810

Attorneys for Plaintiff.

2

00071

## **CERTIFICATE OF SERVICE**

STATE OF ILLINOIS        )
                             )    SS.

COUNTY OF WINNEBAGO    )

       Pursuant to Supreme Court Rule 12, the undersigned certifies that he served a copy of the foregoing Plaintiff's Motion to Strike Alleged Factual Material Unsupported by Affidavit Contained in Defendant's Brief in Reply to Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Plaintiff's Complaint on:

      Attorney Barbara Endoy
      ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD.
      20 North Clark Street, Suite 900
      Chicago, IL 60602

by enclosing same in an envelope, addressed as is shown above, with proper postage prepaid, and depositing same in the United States mail at Rockford, Illinois on the 14th day of December, 2005 at 5:00 p.m.

                                          Peter DeBruyne

SUBSCRIBED and SWORN to before
me this 14th day of December, 2005.

Notary Public

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

LISA FARRELL,               )
                                 )
           Plaintiff,       )
                                 )
      vs.                   )     **Case No. 05 L 301**
                                 )
**ROCK VALLEY COLLEGE,**     )     **Judge Janet Holmgren**
                                 )
          Defendant.     )

FILED
Date: DEC 2005
Clerk of the Circuit Court
By
Winnebago County Deputy
COPY

## DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO STRIKE

**NOW COMES** the above-named Defendant, **ROCK VALLEY COLLEGE,** by and through its attorneys, **ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD.,** and for its Response to Plaintiff's "Motion to Strike Alleged Factual Material Unsupported by Affidavit Contained in Defendant's Brief in Reply to Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Plaintiff's Complaint" states as follows:

1.     On or about December 14, 2005, Plaintiff served the above-referenced Motion to Strike upon Defendant ("Plaintiff's Motion to Strike").

2.     Plaintiff's Motion to Strike seeks to strike Exhibit A to Defendant's Brief in Reply to Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Plaintiff's Complaint, and the portions of Defendant's Brief in Reply that refer to Exhibit A.

3.     Defendant requests leave of the Court to file the attached Affidavit of Polly Winquist in support of Exhibit A to Defendant's Brief in Reply to Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss Plaintiff's Complaint.

4.     The Affidavit of Polly Winquist (attached hereto) addresses and fully responds to Plaintiff's Motion to Strike.

**00073**

**WHEREFORE**, Defendant ROCK VALLEY COLLEGE respectfully requests that this Honorable Court enter an order granting Defendant's request to file the attached Affidavit of Polly Winquist in support of Exhibit A to Defendant's Brief in Reply to Plaintiff's Response to Defendant's Motion to Dismiss Plaintiff's Complaint, and denying Plaintiff's Motion to Strike.

Respectfully submitted,

**ROCK VALLEY COLLEGE**

By: _____
       One of Defendant's Attorneys

Philip H. Gerner III (3127953)
Barbara Endoy (6285513)
ROBBINS, SCHWARTZ, NICHOLAS,
   LIFTON & TAYLOR, LTD.
20 North Clark Street, Suite 900
Chicago, Illinois 60602
Tel.  312.332.7760
Fax  312.332.7768

Dated: December 19, 2005

2

00074

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

LISA FARRELL, )
)
Plaintiff, )
)
vs. )  Case No. 05 L 301
)
ROCK VALLEY COLLEGE, )  Judge Janet Holmgren
)
Defendant. )

## AFFIDAVIT OF POLLY JO WINQUIST

After being duly sworn and deposed, I, Polly Jo Winquist, do hereby state that I am over the age of twenty-one (21) and if called to testify I could competently testify to the following facts based upon my own personal first-hand knowledge:

1.    I have been an employee of Rock Valley College since August 1996. I currently hold the position of Administrative Assistant - Confidential in the College's Human Resources Department.

2.    In July 2001, I was employed as the Administrative Assistant / Office Manager of the College's Human Resources Department.

3.    During 2001-2002 academic year, the College's Human Resources Department developed the Employee Handbook Plus, excerpts of which are attached hereto as Exhibit A.

4.    The Employee Handbook Plus was distributed throughout the College and made effective during the 2001-2002 academic year.

5.    I have reviewed the documents attached hereto as exhibit A, and they are true and accurate excerpts of the Employee Handbook Plus.

FURTHER, Affiant sayeth not.

_Polly Jo Winquist_
Polly Jo Winquist

SUBSCRIBED AND SWORN TO
before me this 19th day of
December, 2005.

_Dale Fildes_
Notary Public

```
"OFFICIAL SEAL"
DALE L. FILDES
Notary Public, State of Illinois
My Commission Expires 05/06/08
```

00075



# Employee Handbook Plus



Rock Valley College

Information compiled and distributed by the
Human Resource Department of RVC.

00076

# WELCOME TO RVC!

Please read your employee handbook and refer to it often. This handbook provides information only and is not a policy manual.

We encourage you to take notes, write any questions you may have while reading your handbook and discuss them with your supervisor or Human Resources representative at any time.

- Rock Valley College is an affirmative action/equal opportunity employer.

- This handbook does not express or imply an employment contract.

- Rock Valley College is an at-will employer: either you or the college may terminate your employment at any time for any reason with or without notice.

- We may change or add, and/or delete information as required.

- Any Rock Valley employee who has knowledge of any activity or behavior which is unethical, immoral or illegal must report this activity or observed behavior immediately to their supervisor or to the Executive Dean/Human Resources.

## Human Resource Services
## Mission Statement

*We are dedicated to serving the needs of employees by attracting, selecting, training, developing, and retaining the highest quality faculty and staff for the enrichment of all life long learners.*

00077

# STATE OF ILLINOIS
## CIRCUIT COURT
### SEVENTEENTH JUDICIAL CIRCUIT



**JANET R. HOLMGREN**
Circuit Judge

**WINNEBAGO COUNTY COURTHOUSE**
ROCKFORD, ILLINOIS   61101
Phone (815) 987-2503
FAX (815) 987-3011

January 9, 2006

Attorney Peter DeBruyne
838 N. Main St.
Rockford, IL 61103
Fax:  (815) 964-3810

Attorney Barbara Endoy
20 N. Clark St., Suite 900
Chicago, IL 60602
Fax:  (312) 332-7768

**RE:**   Farrell v. Rock Valley College
05 L 301

## MEMORANDUM OF DECISION

Counsel:

The Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Section 2-619 is heard and denied.  The Defendant's Motion to file a Supplement Affidavit is granted and the Plaintiff's Motion to Strike Alleged Factual Material is denied.

There is a genuine issue of material fact as to whether the Plaintiff ever received a copy of the entire RVC handbook based upon the contradictory averments of Farrell and Hardy in their respective affidavits.  It is not disputed that Plaintiff was specifically provided with a copy of Policy 629 when RVC initiated the disciplinary process, that Policy 629 does not contain any contractual disclaimers.  Plaintiff asserts that Policy 629 is a valid contract that required RVC to engage in the progressive disciplinary steps prior to dismissing the Plaintiff and the Court agrees with the Plaintiff's analysis and arguments and holds that the three factors of Dulduleo have been met in this case.

The Court requests that Attorney DeBruyne prepare an order, please, for entry on January 11, 2006.

Very truly yours,

Janet R. Holmgren
Circuit Judge

**00078**

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

LISA FARRELL,                          )
                                       )       Case No. 05 L 301
        Plaintiff,                     )
                                       )
    vs.                                )
                                       )
ROCK VALLEY COLLEGE,                   )
                                       )
        Defendant.                     )

FILED
Date: 1-20-06
*Marc A. Gasparini*
Clerk of the Circuit Court
By _____ Deputy
Winnebago County, IL

## ORDER

THIS CAUSE coming on to be heard upon defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Section 2-619 and defendant's oral motion to file a Supplemental Affidavit and plaintiff's Motion to Strike the Alleged Factual Material, and the court, having examined the Memoranda and Affidavits filed by the parties, having heard argument of counsel, and otherwise being fully advised in the premises, does find that the three factors of *Ihidaloo v. St. Mary of Nazareth Hospital* have been met and that,

IT IS HEREBY ORDERED:

1. Defendant's Motion to Dismiss Plaintiff's Complaint pursuant to Section 2-619 is heard and denied;

2. Plaintiff's Motion to Strike Alleged Factual Material is denied;

3. Defendant's oral motion to file Supplemental Affidavit is granted;

4. Defendant shall file an Answer to the Complaint within 21 days;

5. This cause is set for status on 3-20-06 at 9AM

ENTER:

_____
Judge Janet R. Holmgren

DATE:   1-20-06

1

00079

APPROVED BY:

Peter DeBruyne.
Attorney for Plaintiff

Barbara Finlay
Attorney for Defendant

PREPARED BY:
PETER DeBRUYNE
PETER DeBRUYNE, P.C.
838 North Main Street
Rockford, IL 61103

Telephone (815) 964-3810

Attorney for Plaintiff.

2

FILED

Date 2 / 10 / 06

MARGIE A. GASPARINI
Clerk of the Circuit Court
WINNEBAGO COUNTY, ILLINOIS

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

| | | |
|---|---|---|
| LISA FARRELL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05 L 301 |
| | ) | |
| ROCK VALLEY COLLEGE, | ) | Judge Janet Holmgren |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER TO COMPLAINT AND AFFIRMATIVE DEFENSES

Now comes the above-named Defendant, **ROCK VALLEY COLLEGE** ("the College"), by and through its attorneys, **ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD.**, and for its Answer to Plaintiff's Complaint states as follows:

1.    At all times herein RVC was and presently is a community college duly authorized and existing pursuant to the Public Community College Act.

**ANSWER TO PARAGRAPH 1:**    Defendant admits that Rock Valley College is a community college duly authorized and existing pursuant to the Public Community College Act.

2.    RVC hired FARRELL to work in the payroll department of RVC commencing January 4, 1988.

**ANSWER TO PARAGRAPH 2:**    Defendant admits the allegations in this Paragraph.

3.    On January 4, 1988 FARRELL began her employment with RVC and performed the duties of her employment until termination of her employment by RVC on June 16, 2004 in the manner hereinafter alleged in paragraph 4 through 12 inclusive of this Complaint.

**ANSWER TO PARAGRAPH 3:**    Defendant admits that Plaintiff began her employment with the College on January 4, 1988 and that she was employed by the College until her termination on June 16, 2004.  Defendant denies the remaining

**00081**

allegations in this Paragraph.

     4.     On January 16, 2004 FARRELL met with Sherry Foreman, hereinafter "FOREMAN," Manager of Accounts Payable and Payroll Services for RVC.

**ANSWER TO PARAGRAPH 4**:  Defendant  admits  the allegations in this Paragraph.

     5.     Prior to Farrell meeting with FOREMAN on January 16, 2004, RVC distributed RVC Board Policy 629.00 concerning progressive discipline posting it on the RVC website accessible to all employees including FARRELL for the purpose of reliance by its employees including FARRELL upon said policy. A copy of RVC Board Policy 629.00 is attached hereto marked Exhibit A and made a part hereof.

**ANSWER TO PARAGRAPH 5**: Defendant admits that Board Policy 629 was posted on the College's intranet web site, and that a copy of Board Policy 629 is attached to Plaintiff's Complaint. Defendant denies the remaining allegations in this Paragraph.

     6.     At all times on and subsequent to the posting of RVC Board Policy 629.00 on the RVC website, FARRELL relied on RVC Board Policy 629.00 in the performance of the duties of her employment with RVC.

**ANSWER TO PARAGRAPH 6**:  Defendant lacks sufficient information to either admit or deny the allegations in this Paragraph and, therefore, denies the allegations.

     7.     At the January 16, 2004 meeting, FOREMAN orally informed FARRELL of certain alleged deficiencies of FARRELL in the performance of her employment in "processing Board Report 6132 prior to the approval of the Board of Trustees."

**ANSWER TO PARAGRAPH 7**: Defendant admits the allegations in this Paragraph.

     8.     At the January 16, 2004 meeting, FOREMAN also gave FARRELL a copy of RVC Board Policy 629.00.

**ANSWER TO PARAGRAPH 8**: Defendant admits the allegations in this Paragraph.

     9.     After the January 16, 2004 meeting, FOREMAN, in February 2004, gave FARRELL another copy of RVC Board Policy 629.00.

2

**ANSWER TO PARAGRAPH 9:** Defendant lacks sufficient information to either admit or deny the allegations contained in this Paragraph and, therefore, denies the allegations.

10.    On June 8, 2004 FOREMAN gave FARRELL a written reprimand with regard to her work performance, a copy of which is attached hereto marked Exhibit B and made a part hereof and which provides in relevant part:

> In summary, I consider your current work performance to be deficient and unsatisfactory. I expect to see immediate improvement. Please be aware that failure to address the concerns outlined in this memo or further failure to follow established policies and procedures will lead to further disciplinary action, up to and including your immediate dismissal as an employee of Rock Valley College. We will meet during the period of July 12 through July 23, 2004 to discuss your progress or at any time sooner that the situation may warrant."

**ANSWER TO PARAGRAPH 10:** Defendant admits the allegations in this Paragraph.

11.    After June 8, 2004, FARRELL continued her employment with RVC until June 16, 2004 when her employment with RVC was terminated by RVC.

**ANSWER TO PARAGRAPH 11:** Defendant admits the allegations in this Paragraph.

12.    The purported termination of June 16, 2004 was without suspension called for by step three of RVC Board Policy No. 629.00 and occurred prior to a review of FARRELL's progress at least 30 days after the June 8, 2004 written reprimand as is required by step two of RVC Board Policy No. 629.00.

**ANSWER TO PARAGRAPH 12:** Defendant admits that Plaintiff was not placed on a suspension prior to her termination of employment, and denies the remaining allegations in this Paragraph.

13.    By reason of the foregoing purported termination which was for the reasons hereinbefore stated not in compliance with RVC Board Policy

3

00083

No. 629.00, FARRELL was not allowed to continue working at her employment with RVC by reason of which she sustained damages in an amount in excess of FIFTY THOUSAND AND NO/100 ($50,000.00) DOLLARS including but not limited to loss of wages, retirement benefits, personal time pay, vacation pay and health insurance benefits.

**ANSWER TO PARAGRAPH 13:** Defendant admits that Plaintiff's employment was terminated by Defendant, and denies the allegations in this Paragraph.

**WHEREFORE**, the above-named Defendant, **ROCK VALLEY COLLEGE**, respectfully requests that this Honorable Court dismiss Plaintiff's Complaint in its entirety, with prejudice, and award Defendant its costs and attorney fees incurred in defending against this matter.

## DEFENDANT'S AFFIRMATIVE DEFENSES

The above-named Defendant, **ROCK VALLEY COLLEGE**, by and through its attorneys, **ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD.**, for its Affirmative Defenses states as follows:

1.      Under Illinois law, employees such as Plaintiff who are not covered by a collective bargaining agreement or issued an employment contract are presumptively at-will employees.

2.      Plaintiff was issued an employee handbook which contains an at-will disclaimer affirming Plaintiff's at-will employment status.

3.      Board Policy 629 provided progressive discipline guidelines which are non-mandatory and did not alter Plaintiff's at-will employment status.

4.      Even assuming, *arguendo*, that Board Policy 629 was mandatory and binding upon Defendant, Defendant complied with its procedures in terminating Plaintiff's

4

employment for repeated and serious performance errors and misconduct.

5.     Defendant reserves the right to assert additional Affirmative Defenses upon discovery of facts not presently known.

**WHEREFORE**, the above-named Defendant, **ROCK VALLEY COLLEGE**, respectfully requests that this Honorable Court dismiss Plaintiff's Complaint in its entirety, with prejudice, and award Defendant its costs and attorney fees incurred in defending against this matter.

Respectfully submitted,

**ROCK VALLEY COLLEGE**

By: _____
One of Defendant's Attorneys

Philip H. Gerner III (3127953)
Barbara Endoy (6285513)
ROBBINS, SCHWARTZ, NICHOLAS,
  LIFTON & TAYLOR, LTD.
20 North Clark Street, Suite 900
Chicago, Illinois 60602
Tel. 312.332.7760
Fax 312.332.7768

Dated: February 9, 2006

5

FILED
FEB 2 8 2006
ate_____
MARC A. GASPARIN
Clerk of the Circuit Court

STATE OF ILLINOIS
IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT
COUNTY OF WINNEBAGO

LISA FARRELL,                          )
                                       )     Case No. 05 L 301
        Plaintiff,                    )
                                       )
vs.                                    )
                                       )
ROCK VALLEY COLLEGE,                   )
                                       )
        Defendant.                    )

**MOTION TO STRIKE PARAGRAPH THREE OF
DEFENDANT'S AFFIRMATIVE DEFENSES**

NOW COMES the plaintiff, LISA FARRELL, by PETER DeBRUYNE, P.C. and

LEWIS B. KAPLAN, her attorneys, and moves to strike paragraph three of defendant's

affirmative defenses for the following reasons:

1.      Paragraph three of defendant's affirmative defenses states:

> "Board Policy 629 provided progressive discipline guidelines
> which are non-mandatory and did not alter Plaintiff's at-will
> employment status."

In this court's Memorandum of Decision of January 9, 2006 and its Order of January 20,

2006 it has found "that the three factors of *Duldulao v. St. Mary of Nazareth Hospital* have been

met . . ." Those three factors are:

> First the language of the policy statement must contain a promise
> clear enough that an employee would reasonably believe that an offer had
> been made. Second, the statement must be disseminated to the employee in
> such a manner that the employee is aware of its contents and reasonably
> believes it to be an offer. Third, the employee must accept the offer by
> commencing or continuing to work after learning of the policy statement.
> *Duldulao v. St. Mary of Nazareth Hospital*, 115 Ill.2d 482, 491.

This court necessarily has found a contract between plaintiff and defendant pursuant to the

above three factors and thus defendant's attempt to raise this issue again is precluded by 735 *ILCS*

5/2-619(d) which provides in relevant part:

1

**00086**

(d) The raising of any of the foregoing matters by motion under this Section does not preclude the raising of them subsequently by answer unless the court has disposed of the motion on its merits; . . .

Because the court has disposed of defendant's motion on the merits, paragraph three of its affirmative defenses must be stricken.

LISA FARRELL, Plaintiff,

BY: PETER DeBRUYNE, P.C.

Peter DeBruyne, Her Attorney

/LEWIS B. KAPLAN, her Attorney

Peter DeBruyne - #405
PETER DeBRUYNE, P.C.
838 North Main Street
Rockford, IL 61103

Lewis B. Kaplan - #1207
838 North Main Street
P.O. Box 1254
Rockford, IL 61103
Telephone (815) 963-3090

Attorneys for Plaintiff.

2

00087

## CERTIFICATE OF SERVICE

STATE OF ILLINOIS       )
                             )   SS.
COUNTY OF WINNEBAGO    )

      Pursuant to Supreme Court Rule 12, the undersigned certifies that he served a copy of the foregoing Motion to Strike Paragraph 3 of Defendant's Affirmative Defenses on:

    Attorney Barbara Endoy
    ROBBINS, SCHWARTZ, NICHOLAS, LIFTON & TAYLOR, LTD.
    20 North Clark Street, Suite 900
    Chicago, IL 60602

by enclosing same in an envelope, addressed as is shown above, with proper postage prepaid, and depositing same in the United States mail at Rockford, Illinois on the 28th day of February, 2006 at 5:00 p.m.

                             Peter DeBruyne

SUBSCRIBED and SWORN to before
me this 28th day of February, 2006.

Notary Public.

"OFFICIAL SEAL"
LAURA M. HINGIS
Notary Public
My Commission...

**00088**